LOUIS H. AND SHERYL I. MEYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meyer v. Commissioner
Docket No. 12377-81.
United States Tax Court
T.C. Memo 1984-487; 1984 Tax Ct. Memo LEXIS 187; 48 T.C.M. (CCH) 1102; T.C.M. (RIA) 84487; September 11, 1984. *187 Petitioner-wife's ex-husband did not make any court-ordered support payments for their minor children in 1978. The debt that arose was worthless at the end of 1978. Petitioners' expenditures in 1978 for support of these minor children exceeded this debt. Held: Petitioners are not entitled to a bad debt deduction because they have no basis in the debt. Swenson v. Commissioner,43 T.C. 897 (1965), followed; Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (CA10 1971), inapplicable. Louis H. Meyer and Sheryl I. Meyer, pro se. M. Catherine McKenna, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1978 in the amount of $879. After a concession by petitioners, the issue for decision [1] is whether petitioners are entitled to a bad debt deduction under section 166 [2] on account of unpaid child support payments. FINDINGS *188 OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Sheryl I. Meyer (hereinafter sometimes referred to as "Meyer") and Louis H. Meyer, wife and husband, resided in Rancho Cordova, California. Meyer married Edward Elliott Sponable (hereinafter sometimes referred to as "Sponable") on May 23, 1959. They were legally separated about July 1976 and divorced on May 17, 1977. The divorce decree granted joint and equal custody of their minor children to both Meyer and Sponable and ordered [Sponable to] pay $100.00 per month, or 7% of [his] gross income, whichever is greater [for each of their children] until such time as each such child has reached majority or shall live with [him] on a permanent basis. In addition [Sponable] shall keep and maintain in force health and hospitalization insurance at his place of employment for siad [sic] children until they attain majority. And in addition, [Sponable] shall keep and maintain in force the life insurance he presently has and will continue to name the children of the parties as beneficiaries thereof. *189 [Sponable] further agrees to pay any and all medical, dental, drug and hospitalization expenses for said children until each shall attain majority. In addition, the decree ordered that Sponable may claim the oldest child and the youngest child "as exemptions for State and Federal Income Tax purposes as long as he pays support pursuant to this agreement." During 1978, Meyer had a right to receive $3,100 as court-ordered child support payments from Sponable. At the close of 1978, the $3,100 was uncollectible. During 1978, petitioners spent, from their own funds, more than $3,100 for the support of Meyer's and Sponable's three children. On their 1978 Federal income tax return, petitioners claimed $3,100 as a short-term capital loss on account of this arrearage in 1978 support payments, which resulted in a deduction of $3,000; respondent disallowed the entire deduction. On this tax return, petitioners claimed (1) dependency deductions for these three children, (2) a deduction for medical expenses largely incurred for these three children, and (3) a child care credit for expenses part of which were incurred for one of these children; respondent did not disallow any of these items. OPINION *190 Respondent maintains that petitioners are not entitled to a bad debt deduction on account of the worthlessness of Sponable's child-support arrearage, because petitioners failed to establish a basis in any debt. Petitioners contend that they have proven all the elements necessary to show the existence, amount, basis, and worthlessness of a debt for 1978 in accordance with the opinion of the Court of Appeals for the Ninth Circuit in , affg. a Memorandum Opinion of this Court. [3] They contend that the Imeson opinion is controlling under the "Golsen rule". ( , affd. .) We agree with respondent. In order to deduct a bad debt (sec. 166(a) [4] *191 ), the taxpayer must show that a number of requirements have been satisfied. The requirement we examine in the instant case is that petitioners show that Meyer has a basis in the debt (sec. 166(b) [5]). A legally enforceable divorce decree set forth Sponable's child-support obligation and Meyer's right to receive the payments. This obligation was not contingent on any expenditure made by Meyer. Sponable was obligated to make monthly support payments regardless of whether Meyer spent little, much, or nothing at all on child support. Similarly, Meyer's expenditures were independent of Sponable's court-ordered payments and neither created nor affected the amount of the debt that Sponable owed to Meyer. When faced with this same issue in , we held that the taxpayer did not have a basis in the debt and so no deduction was allowable under section 166. Petitioners have not presented any argument which *192 would lead us to distinguish or overrule Swenson.
We conclude that petitioners are not entitled to a bad debt deduction. Petitioners maintain that under the "Golsen rule", the instant case is to be disposed of in accordance with the decision of the Court of Appeals for the Ninth Circuit in Imeson. In Golsen, we said that "better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone". (; emphasis added.) In the instant case, not only is the Imeson court's decision not "squarely in point" but, in our opinion, even its application would result in an decision adverse to petitioners. After noting our position in Swenson, the Court of Appeals' opinion in Imeson suggests possibly analogizing the case to that of "a taxpayer who pays materialmen's liens on his house after the builder has defaulted" or "a guarantor who pays the creditor when the principal debtor defaults" (), in which events a bad debt deduction may be allowable. Conversely, that opinion suggests an analogy to the treatment of "uncollectible unpaid wages or salary" *193 or to the situation where a "taxpayer wife * * * [pays] her and her husband's joint income tax liability" (ibid.), in which events a bad debt deduction is not allowable. Finally, that opinion explicitly declares that "[we] do not resolve these questions" (ibid.). We conclude that the materialmen's lien and guarantor analogies further illustrate the shortcomings in petitioners' case. In these analogies, the taxpayer would be a creditor only when and to the extent that the taxpayer paid the original debt. However, in the instant case, Sponable's obligation to Meyer arose, and was determined as to amount, irrespective of petitioners' expenditures. Since the Court of Appeals' opinion in Imeson does not lead to a result different from that to which we are led by our opinion in Swenson, reliance on the "Golsen rule" is inappropriate in the instant case. We hold for respondent. Decision will be entered for respondent.
Footnotes
1. The medical expense adjustment is derivative and depends on the resolution of the issue for decision. ↩
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
3. ↩
4. SEC. 166. BAD DEBTS (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. 5. SEC. 166. BAD DEBTS * * * (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.↩